Jason JORDAN *v.* STATE of Arkansas

CA CR 98-1525                                          13 S.W.3d 221

Court of Appeals of Arkansas
En Banc
Opinion delivered March 22, 2000[1]

WENDELL L. GRIFFEN Judge, concurring. G.B. "Bing" Colvin, III, the full-time public defender for Desha County, has filed a motion for attorney's fees for services in this criminal appeal on behalf of Jason Jordan, an indigent appellant. In our January 26, 2000 opinion, not designated for publication, we affirmed Jordan's convictions and sentences for aggravated robbery and theft of property. Colvin's motion for attorney's fees was timely filed on January 27, 2000. It reflects that he was appointed counsel for Jordan by order of the Circuit Court of Desha County, filed March 13, 1998. The motion further reflects that after considering the demands of his other cases and obligations, Colvin, with the approval of Jordan, secured the services of Stark Ligon, a licensed attorney with experience as a former assistant city attorney, former deputy prosecuting attorney, and former circuit judge, and reflects that Ligon prepared the brief for the appellant in this case. An itemized statement of Ligon's activities in preparing the brief has been attached to the motion for attorney's fees. Of particular concern is Colvin's certification, in compliance with the January 13,

---

[1] *Reporter's note:* Only the concurring opinions of GRIFFEN and CRABTREE, JJ., and the dissenting opinion of BIRD, J., were published.

2000 decision of the Arkansas Supreme Court in *Rushing v. State*, CR 99-1312, that no part of any fee awarded shall become compensation to Colvin and that any fee awarded will be paid over by Colvin in full to Ligon for services rendered as "briefing assistant."

I would very much like to award a fee to Colvin in accordance with the past practice of our court in such an instance. Our court's longstanding practice has merely followed the supreme court's long practice of awarding attorney fees in these instances. However, the *Rushing* decision precludes me from joining an opinion to award fees in this case. Because I join the decision to abide by the directive set out in *Rushing*, but strongly believe that directive to be both unfair and unrealistic, I am writing this separate opinion.

In *Rushing*, our supreme court unanimously denied a motion for attorney's fees for services provided by a full-time public defender, Jim Pedigo of Miller County, to Kenneth Joel Rushing, an indigent appellant who appealed his conviction and life sentence for first-degree murder. In denying the motion for attorney's fees, the supreme court held that Pedigo's status as a full-time public defender compensated by the State of Arkansas prohibited him from receiving any additional compensation from the State for his services representing indigent appellants in criminal appeals pursuant to Ark. Code Ann. § 16-87-214 (Repl. 1987) and Ark. Code Ann. §§ 19-4-1601-1615 (Repl. 1998) (the Regular Salary Procedures and Restrictions Act).

Based upon its view that the Regular Salary Procedures and Restrictions Act prohibits public defenders from receiving compensation from the State in an amount greater than that established by the General Assembly as the maximum annual salary for the employee, the supreme court reasoned that full-time public defenders such as Pedigo are "not entitled to receive any additional compensation from the [S]tate" for their services. The court reached this conclusion despite the express terms of Arkansas Supreme Court Rule 6-6(c) which prescribes the requisite material to be included in motions for attorney's fees from attorneys appointed to represent indigent appellants in criminal cases. The supreme court acknowledged that Rule 6-6(c), "by its terms, applies to attorneys 'appointed to represent indigent appellants in criminal cases.' "

Article 7, section 4, of the Constitution of the State of Arkansas provides that the supreme court "shall have a general superintending control over all inferior courts of law and equity...." The court of appeals, as an inferior court, is obliged to follow the supreme court's decision in *Rushing*. Thus, I am bound by my oath of office to follow the *Rushing* decision and holding and must join today's decision to deny what I believe to be a well-earned attorney's fee. Colvin, like the public defender in *Rushing*, is a full-time public defender. I find no reason to disbelieve his affirmation that the entire amount of any fee awarded to him will be paid over to Ligon, the briefing assistant whose services were secured with the approval of the appellant to prepare the appellate brief. Furthermore, I find no reason to question the reasonableness of Ligon's services in researching the issues and preparing the brief. I only join the decision to deny Colvin's motion for attorney's fees because I am duty-bound to follow the decisions of the supreme court. But that obligation neither blinds me to the realities of law practice nor renders me insensitive to the inequities that the *Rushing* decision and its rationale will heap upon indigent appellants in criminal cases and the overworked public defenders who represent them.

It is certainly true that full-time public defenders such as Colvin are prohibited from receiving "any funds, services or other thing of monetary value, directly or indirectly, for the representation of an indigent pursuant to court appointment, except the compensation provided by law." Ark. Code Ann. § 16-87-214 (Repl. 1987). However, I do not understand how court-appointed lawyers for indigent appellants in criminal cases who file for attorney's fees pursuant to Supreme Court Rule 6-6 for work properly done on behalf of their indigent clients can rightly be deemed to apply for compensation other than that "provided by law." One would ordinarily reason that a motion for attorney's fees submitted by a court-appointed attorney for services properly provided to an indigent appellant pursuant to Rule 6-6 would constitute an application for "compensation provided by law" within the meaning of section 16-87-214. The opinion in *Rushing* simply concludes that the reference to appointed counsel in Rule 6-6(c) refers to attorneys not otherwise compensated for their representation without explaining why full-time public defenders, not expressly exempted from the rule despite their existence since 1993, should not be covered by the rule.

Yet, my disagreement with the *Rushing* holding and the result it produces stems from more than judicial nitpicking. It is well-known that public defenders are overworked and face an ever-growing workload as the number of persons accused of criminal offenses who cannot afford private legal counsel steadily grows. The pressures on public defenders are further compounded because the prospect of serving longer prison sentences and paying stiffer fines means indigent persons accused of criminal conduct are choosing to go to trial more frequently. This means public defenders must devote a greater proportion of scarce time and energies to trial preparation and defense in more cases, leaving them little time to handle the growing number of appeals. Thus, public defenders such as Colvin have resorted to contracting with third parties to handle their appellate workload rather than do inadequate work in appeals. Even under this arrangement, the amount awarded by our court for attorney's fees is quite low, usually less than $900 per appeal. It appears that the *Rushing* decision fails to take into account any of these realities. Rather, it now compels overworked full-time public defenders to handle indigent appeals without the prospect of even obtaining that meager attorney's fee.

Moreover, the *Rushing* holding appears to disregard or ignore the salient fact that public defenders are confronted by a two-platoon prosecutorial legal team. Criminal prosecutions are handled at the trial level by county prosecutors. On appeal, the prosecutorial duties are transferred to the Office of the State Attorney General with its separately compensated criminal division. Thus, indigent persons are prosecuted in a system that separately funds lawyers for the prosecution at the appellate level, yet now denies, based on the *Rushing* holding, separate funding to lawyers for those convicted of criminal offenses. My obligation to respect the superintending power of our supreme court cannot blind me to the inequity of this process.

I certainly hope that the Public Defenders Commission will use the *Rushing* opinion and holding as impetus for lobbying the public and General Assembly for the additional funding needed to establish a separately compensated cadre of lawyers dedicated to handling criminal appeals for indigent persons. However, I doubt that legislators will appropriate additional funding to cover an appellate division for the Public Defenders' Commission comparable to the criminal division of the Office of the Attorney General.

Poor persons accused of criminal conduct have little lobbying power in government; poor persons convicted of criminal offenses have none. Even if that unlikely event occurs, however, we must meanwhile contend with the present system which leaves public defenders overworked, out-staffed, and now denied separate compensation for the appellate work they must perform.

In the wake of the *Rushing* holding, trial courts will be presented with motions for leave to withdraw by full-time public defenders after convictions are entered but before notices of appeal are filed. Appellate courts will be required to appoint separate counsel who will be eligible for payment for their services pursuant to Rule 6-6. Appellants will suffer delays caused by the need for new lawyers to become familiar with the trial records and their clients. It is regrettable that the holding in *Rushing* was not made effective for appeals lodged after that decision was issued. Had that simple approach been employed by our supreme court, deserving lawyers such as Colvin and Ligon who assist indigent persons in criminal appeals would at least be eligible for compensation for their past labor.

From ancient times it has been understood that one should not muzzle an ox while it is threshing. *See Deuteronomy* 25:4. If it is unfair to behave that way toward an ox, it is equally unfair to behave that way regarding the lawyers who represent poor persons convicted of crimes.

TERRY CRABTREE, Judge, concurring. We have struggled with several motions for attorney's fees from public defenders for preparing appeals to this court. It is clear that *Rushing v. State*, 340 Ark. 84, 8 S.W.3d 489 (2000), is controlling, and we should not give pause to consider its ramifications. That is a matter to be left to the supreme court and the legislature. We should not criticize the holding nor resolve the question by judicial fiat.

MEADS and ROAF, JJ., join.

SAM BIRD, Judge, dissenting. This court, sitting en banc, has denied a motion for the payment of an attorney's fee for representation of the appellant in this appeal, presumably in reliance on the decision of the Arkansas Supreme Court in *Rushing v. State*, 340 Ark. 84, 8 S.W.3rd 489 (2000). I respectfully dissent from this

court's denial of the motion because I do not believe we are precluded by the *Rushing* decision from awarding a fee in this case.

*Rushing* prohibits the award of a fee to salaried public defenders who are appointed to represent indigents on appeal. This is not what has occurred in the case at bar. In this case, appellant was represented by the salaried public defender at trial. After filing a notice of appeal, all services in connection with the appeal to this court have been performed by Stark Ligon, who is neither a full- or part-time public defender. In his motion, the full-time public defender, G.B. "Bing" Colvin, III, acknowledges that no part of the fee awarded by this court will be compensation to him, and that the entire amount of the fee will be paid in full to Mr. Ligon. Furthermore, *Rushing* only prohibits the payment of *additional compensation* to salaried public defenders for services rendered by them on appeal. Under the circumstances present here, the public defender will receive no additional compensation.

I do not believe that payment of compensation that will inure only to the benefit of Mr. Ligon would violate the Regular Salary Procedures and Restrictions Act, Act 1379 of 1999, § 1; Ark. Code Ann. §§ 19-4-1601—1615, and, under these circumstances, I would award a fee. I believe that our obligation to do so is even more compelling where, as here, Ligon performed the services on appeal in reliance on this court's practice before the *Rushing* decision.

HART, J., joins in this dissent.